# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-2246

———————————————

United States of America,

*Plaintiff - Appellee,*

v.

Anthony K. Collins,

*Defendant - Appellant.*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: November 17, 2017
Filed: February 28, 2018
[Published]

——————————

Before COLLOTON and GRUENDER, Circuit Judges, and READE,[1] District Judge.

——————————

PER CURIAM.

Anthony Collins entered a conditional plea of guilty to unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and

———————————————

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

924(a)(2).  On appeal, Collins challenges a district court[2] order denying his motion to suppress evidence discovered during a search following a warrantless car stop.  We affirm.

## I.

On June 13, 2016, at approximately 3:30 a.m., Officers Swaggart, Murphy and DuChaine of the Kansas City, Missouri Police Department were conducting surveillance of a residence at 9028 Oak Street, Kansas City, Missouri, the residence of Robert "Rob" Currie.  Detective Cartwright of the Kansas City Drug Enforcement Unit advised that Currie drove a white motorcycle and sold methamphetamine out of his garage during the late evenings and early mornings.

Detective Cartwright had previously conducted two controlled buys at the Oak Street garage.  Approximately two years prior to the June 13, 2016 surveillance, Detective Cartwright obtained hashish.  At the second controlled buy, which occurred only two months earlier, Detective Cartwright purchased methamphetamine.  While waiting in the garage for Currie to retrieve the methamphetamine from a hotel, Detective Cartwright observed approximately ten people injecting methamphetamine.  During this time, he was offered methamphetamine and marijuana.  Several confidential informants had also provided Detective Cartwright information regarding drug activity at the Oak Street residence.

During the approximately one month that Officer Murphy had conducted surveillance of the Oak Street residence, including on June 13, 2016, she had observed heavy vehicle, bicycle and foot traffic in and out of the garage.  This traffic

---

[2]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Chief Magistrate Judge for the Western District of Missouri.

primarily consisted of brief visits occurring in the late evening and early morning hours. The garage had a large floodlight above it and both the home and attached garage were equipped with multiple surveillance cameras that appeared to be focused on the garage.

At approximately 4:30 a.m., Officer DuChaine observed a Mercury Grand Marquis pull into the driveway of the Oak Street residence. The white motorcycle was parked in the driveway. An unknown white male, who was later identified as Collins, got out of the driver's seat of the vehicle and went into the garage. Collins emerged from the garage approximately ten to fifteen minutes later, reentered the vehicle and drove away from the residence.

Officers Swaggart and Murphy followed the vehicle a short distance and turned on their lights after it was out of sight of the garage. The vehicle made multiple turns and repeatedly tapped its brakes. The officers then initiated a traffic stop. The vehicle traveled approximately 200 yards before coming to a stop. The officers ordered both Collins and his passenger to exit the vehicle. After Collins and his passenger were detained, Officer DuChaine observed a magazine with live ammunition in plain view on the driver's seat. Officer DuChaine conducted a protective sweep of the vehicle and recovered a loaded firearm in the glove box. The officers arrested Collins for failure to yield to an emergency vehicle. Officer Murphy ran a records check and learned that Collins was a convicted felon. At that time, the officers also arrested Collins for being a felon in possession of a firearm.

A grand jury charged Collins with one count of possession of a firearm as a previously convicted felon. Collins moved to suppress all evidence obtained as a result of the warrantless seizure of his vehicle. The district court ruled that the seizure and subsequent search were lawful. Collins then entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the denial of his motion to suppress. On appeal, Collins argues that the stop

was unconstitutional because the officers lacked reasonable suspicion to stop his vehicle.

## II.

"This Court reviews the facts supporting a district court's denial of a motion to suppress for clear error and reviews its legal conclusions de novo." *United States v. Long*, 870 F.3d 792, 796 (8th Cir. 2017) (quoting *United States v. Cotton*, 782 F.3d 392, 395 (8th Cir. 2015)). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Braden*, 844 F.3d 794, 799 (8th Cir. 2016) (quoting *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008)).

"A police officer 'may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). "This includes the right to 'briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity.'" *United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007) (quoting *United States v. Hensley*, 469 U.S. 221, 226 (1985)).

"We consider the totality of the circumstances when determining whether an officer has a particularized and objective basis to suspect wrongdoing." *United States v. Robinson*, 670 F.3d 874, 876 (8th Cir. 2012). We allow "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known

-4-

to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." *Winters*, 491 F.3d at 921 (quoting *United States v. Robinson*, 119 F.3d 663, 666 (8th Cir. 1997)). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Quinn*, 812 F.3d 694, 697-98 (8th Cir. 2016) (quoting *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995)).

Collins argues that the officers lacked reasonable suspicion that he was involved in criminal activity. First, he contends that the government did not establish that illegal activity was so prevalent at the Oak Street residence that it was likely that any visitor was there to engage in illegal activity. Second, Collins asserts that the officers did not have any evidence that he had previously used or sold narcotics. Third, he argues that Officer Murphy did not actually observe any drug sales while conducting surveillance. Finally, Collins contends that the time of night that he was at the Oak Street residence is not indicative of drug trafficking because drugs can be sold at any time of day or night. At oral argument, Collins conceded his challenge was limited to the initial investigatory stop.

Collins attempts to challenge each individual factor in isolation. "The totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis.'" *Quinn*, 812 F.3d at 698 (quoting *Arvizu*, 534 U.S. at 274). When considered in light of the totality of the circumstances, Collins's arguments fail. The district court's conclusion that the Oak Street residence was known for the sale of methamphetamine is not clearly erroneous, as it was based on Detective Cartwright's purchase of methamphetamine in the garage, information from several confidential informants and the officers' testimony based on their observations and experience. Further, independent knowledge of a person's prior involvement with narcotics is not required to find reasonable suspicion. *See, e.g.*, *United States v. Bustos-Torres*, 396 F.3d 935,

942-43 (8th Cir. 2005) (finding reasonable suspicion where there was no knowledge of the defendants' criminal histories or prior drug use and the defendants were merely associated with an individual suspected of selling drugs); *United States v. Buchannon*, 878 F.2d 1065, 1066-67 (8th Cir. 1989) (finding reasonable suspicion and acknowledging that "nothing implicat[ed] [the defendant] until he was seen entering [a] house" currently under investigation and imminently subject to a search warrant). Additionally, the officers were entitled to rely on their experience to conclude that the heavy traffic they observed, consisting largely of brief visits in the late evening and early morning hours, was consistent with drug trafficking. *See Winters*, 491 F.3d at 922; *Robinson*, 119 F.3d at 667.

Here, the officers observed Collins enter a garage where they knew that drugs had been sold. Collins emerged from the garage a short time later. The incident occurred at approximately 4:30 a.m. The white motorcycle was in the driveway, indicating that Currie, who sold drugs, was likely home. The officers had observed a high volume of traffic at the garage, primarily during the late evening and early morning hours, in the month prior to the stop. These facts gave officers ample reason to believe that the vehicle contained drugs or other evidence of drug related activity. *See United States v. Spotts*, 275 F.3d 714, 718-19 (8th Cir. 2002); *Robinson*, 119 F.3d at 667; *Buchannon*, 878 F.2d at 1067. Given all of the circumstances, the officers had reasonable suspicion that Collins was engaged in criminal activity. Therefore, the stop of Collins's vehicle was constitutionally valid.

III.

Collins also argues that the officers did not have reasonable suspicion to stop his vehicle because he did not fail to yield to the patrol vehicle when its lights were activated. Because we conclude that the officers had reasonable suspicion to believe that Collins was involved in criminal activity prior to initiating the stop, we do not reach this argument.

-6-

## IV.

The judgment of the district court is affirmed.

_____